UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | |
|---|---|
| UNITED STATES ) | |
| ) | No. 1:10-CR-137 |
| v. ) | |
| ) | Judge Curtis L. Collier |
| JAMES D GAMBLE ) | |
| ) | |

# MEMORANDUM & ORDER

On June 18, 2014, the United States Court of Appeals for the Sixth Circuit vacated this Court's prior restitution order in this case (Court File No. 40) in light of the Supreme Court's decision in *Paroline v. United States*, 134 S. Ct. 1710 (2014). Based on a review of the post-*Paroline* case law, the Court has developed a workable approach that will, on the surface at least, be both consistent in its application and fair to this and future defendants. The Court will briefly discuss the relevant case law and lay out its proposed procedure below. The Court asks that both parties brief the issues raised by the Court's proposal and be prepared to argue these issues at the resentencing hearing on July 30, 2015. The Parties shall have fourteen days from the entry of this order to brief the issues.

**I.    ANALYSIS**

    **A.    *Paroline***

In 2014, the Supreme Court took up the issue of proximate cause under 18 U.S.C. § 2259(a). Based on a plain reading of the statute, the Supreme Court held that proximate cause was required. *Paroline v. United States*, 134 S. Ct. at 1722. "[T]he requirement of proximate causation, as distinct from mere causation in fact, would prevent holding any possessor liable for losses caused in only a remote sense." *Id.* But the Court went on to note that

> the victim's costs of treatment and lost income resulting from the trauma of

knowing that images of her abuse are being viewed over and over are direct and foreseeable results of child-pornography crimes, including possession, assuming the prerequisite of factual causation is satisfied. The primary problem, then, is the proper standard of causation in fact.

*Id*. In so holding, the Court rejected the but-for causation standard and several others drawn from tort and criminal law stating that

> It would be anomalous to turn away a person harmed by the combined acts of many wrongdoers simply because none of those wrongdoers alone caused the harm. And it would be nonsensical to adopt a rule whereby individuals hurt by the combined wrongful acts of many (and thus in many instances hurt more badly than otherwise) would have no redress, whereas individuals hurt by the acts of one person alone would have a remedy.

*Id*. at 1724. The Court also rejected the victim's proposal, the more expansive "aggregate causation" theory, which would hold each offender liable for all of the victim's damages. *Id*. The Court noted that such a standard would be inconsistent with the statutory language and purposes and might raise Constitutional concerns under the excessive fines clause. *Id*. at 1725–26.

Having rejected both the but-for causation approach advocated by the defendant and the aggregate loss theories advocated by the victim and the government, the Court directed district courts to "order restitution in an amount that comports with the defendant's relative role in the causal process that underlies the victim's general losses." *Id*. at 1727. In determining the amount that comports with the defendant's relative role in the causal process, a district court should determine the amount of losses suffered by the victim due to the continuing traffic in the victim's images and then apportion an amount approximating the significance of the defendant's conduct in producing those losses. In determining that amount, the district court could consider

> the number of past criminal defendants found to have contributed to the victim's general losses; reasonable predictions of the number of future offenders likely to be caught and convicted for crimes contributing to the victim's general losses; any available and reasonably reliable estimate of the broader number of offenders

2

> involved (most of whom will, of course, never be caught or convicted); whether the defendant reproduced or distributed images of the victim; whether the defendant had any connection to the initial production of the images; how many images of the victim the defendant possessed; and other facts relevant to the defendant's relative causal role.

*Id*. at 1728. The Court emphasized that "[t]hese factors need not be converted into a rigid formula, especially if doing so would result in trivial restitution orders." *Id*.

### B. Cases Applying *Paroline*

Now that the courts have had over a year's experience with *Paroline*, there is a developing a body of law on restitution orders based on the *Paroline* factors. The Court has reviewed this caselaw. One set of courts have applied modified versions of the approach taken in the pre-*Paroline* Sixth Circuit decision in the instant case, *United States v. Gamble*, 709 F.3d 541, 554 (6th Cir. 2013), which calculated the total losses and then divided that number by the number of defendants possessing the victim's image. *See, e.g.*, *United States v. DiLeo*, No. 12-CR-260 ENV, 2014 WL 5841083, at *8 (E.D.N.Y. Nov. 4, 2014); *United States v. Watkins*, No. 2:13-CR-00268 LKK AC, 2014 WL 3966381, at *7 (E.D. Cal. Aug. 13, 2014) *report and recommendation adopted*, No. 2:13-CR-00268-MCE-AC, 2014 WL 5697712 (E.D. Cal. Oct. 30, 2014); *United States v. Crisostomi*, 31 F. Supp. 3d 361, 365 (D.R.I. 2014); *United States v. Galan*, No. 6:11-CR-60148-AA, 2014 WL 3474901 (D. Or. July 11, 2014); *United States v. Hernandez*, No. 2:11-CR-00026-GEB, 2014 WL 2987665 (E.D. Cal. July 1, 2014). Other courts have used the approach initially set forth in *United States v. Kearney*, 672 F.3d 81 (1st Cir. 2012) which involves starting from the average amount awarded to the victim in past restitution orders. *See, e.g.*, *United States v. Bellah*, No. 13-10169-EFM, 2014 WL 7073287, at *4 (D. Kan. Dec. 12, 2014) (applying a modified version of *Kearney* with enhancements for the number of images possessed to award $,1500 to Vicky, $1,500 to J-Blonde, $7,500 to victims in 8-kids series, and

3

$5,000 for the victim of the Spongebob series); *United States v. Miner*, No. 1:14-CR-33 MAD, 2014 WL 4816230, at *13 (N.D.N.Y. Sept. 25, 2014). Still other courts have come up with their own approach entirely. *See, e.g.*, *United States v. Rogers*, 758 F.3d 37 (1st Cir. 2014) (approving a district court order that considered some of the factors listed in *Paroline* and then awarded Vicky the cost of 18 therapy visits, or $3,150).

The above approaches suffer from various defects that ultimately persuaded the Court that it should formulate its own approach. As to the approach previously used by the Sixth Circuit in this case, the Court first observes that as the number of restitution orders increase, the restitution assessed against each defendant will decrease.[1] Some courts have tried to address this problem by estimating future defendants, but such an exercise is inherently speculative. *United States v. DiLeo*, 58 F. Supp. 3d 239, 249 (E.D.N.Y. 2014) (noting that "[a]ll that can be said reliably is that the number of individuals who view these images will increase at some rate in the future"). As to the *Kearney* approach, it is only useful where a substantial number of courts have entered restitution orders for a particular victim.

Regardless of the particular test applied, district courts have generally awarded between $2,000 and $3,500 in costs (excluding attorney fees) in the typical case child pornography case. *See, e.g.*, *United States v. Hite*, No. CR 12-65 (CKK), 2015 WL 3941513, at *5 (D.D.C. June 29, 2015) (holding that in light of prior restitution awards $2,500 was appropriate for each victim from the "8 kids" series); *United States v. DiLeo*, 58 F. Supp. 3d 239, 249 (E.D.N.Y. 2014) (noting that across approaches restitution awards for Vicky have generally ranged from $2,000 to

---

[1] Consider Defendant A and Defendant B, both of whom possessed the identical ten pictures of a Victim and were equivalent in all respects except the date of sentencing. Assume that Victim's total losses are $1,000,000. Assume also that Defendant A is the 500th defendant sentenced for possessing victim's images and that Defendant B is the 1,000th defendant. Under the Gamble approach, the starting value for Defendant A would be $2,000 while for Defendant B it would be $1,000.

4

$4,000).

C. **The Court's Proposed Approach**

The Court thus proposes the following rubric:

| Tier | Restitution Amount | Defendant's Contribution |
|---|---|---|
| I | Above $5,000 | Most Severe Case |
| II | $3,500 – 5,000 | Severe Case |
| III | $2,000 – $3,500 | Typical Case |
| IV | $1,000 – 2,000 | Mitigated Case |
| V | Below $1,000 | Most Mitigated Case |

The Court would decide which Tier a defendant should be placed in based on the nonexclusive list of factors set forth by the Supreme Court in *Paroline*:

> [T]he number of past criminal defendants found to have contributed to the victim's general losses; reasonable predictions of the number of future offenders likely to be caught and convicted for crimes contributing to the victim's general losses; any available and reasonably reliable estimate of the broader number of offenders involved (most of whom will, of course, never be caught or convicted); whether the defendant reproduced or distributed images of the victim; whether the defendant had any connection to the initial production of the images; how many images of the victim the defendant possessed; and other facts relevant to the defendant's relative causal role.

*Paroline*, 134 S. Ct. at 1728. Other factors that might be relevant would include how many times an image was viewed, the length of time an image was possessed, and whether there were others who viewed the image while it was in the possession of the defendant. A typical defendant could expect to be placed in Tier III and the Court would order restitution at some value between $2,000 and $3,500. A defendant who possessed a large library of particularly sadistic images from a victim with outsized losses who solicited those images from the original

5

producer would likely be placed in Tier I and be expected to be held responsible for restitution in excess of $5,000. On the other end of the spectrum, a defendant who possessed few images of a victim who did not have tremendous losses would likely be in the Tier I end of the spectrum. The factors listed above are nonexhaustive. Not every one of the factors would apply in every case and there may be factors that would be relevant that may not be listed above. The list is only meant to be a starting point.

## II. CONCLUSION

This approach is consistent with the Supreme Court's admonition that that "[t]hese factors need not be converted into a rigid formula, especially if doing so would result in trivial restitution orders." *Paroline*, 134 S. Ct. at 1728. It also provides the Court and future defendants with an analytical framework within which to analyze the issues presented by these restitution orders. And this framework provides defendants with notice of what can be expected in terms of a restitution award. The Court thinks that this framework will allow the Court to be consistent and fair in its application of 18 U.S.C. § 2259(a) across victims and across defendants. Lastly, it provides the appellate courts with a clear understanding of how the restitution amount was decided.

At this stage, this is only a proposed framework. The Court is open to comments and suggestions from the parties on both the framework itself and the individual values in the tiered system. The Court asks that both parties, if they wish, brief the issues raised by the Court's proposal and be prepared to argue these issues at the resentencing hearing on July 30, 2015. The parties should also be prepared to argue where Defendant falls in this framework. The parties shall have **fourteen days** from the entry of this order to brief the issues.

**SO ORDERED.**

**ENTER:**

/s/_____
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**